NelsoN, J.,
delivered the opinion of the court.
This action of debt was commenced on the 4th of February, 1868, against the personal representatives of Jacob L. Wassum, deceased, and of fi. N. Gillespie, deceased, to recover the amount of a lost note, or bond, executed by said Wassum, with R. N. Gillespie as his surety, on the 15th of May, 1855, payable one day after date to Wright Smith, Jr., deceased, and assigned by him to J. W. Gillespie, as guardian. It appears from the evidence of the Clerk and Master of the Chancery Court for Rhea county, that the records of said court, before the war, were burned or destroyed in 1863, and from his testimony, corroborated by that of other witnesses, that the administrator of said Wassum filed a bill in the said court, alleging that the personal estate had been exhausted and that it was necessary to sell part of the real estate for the payment of debts; that “an order was made for creditors to file their claims within a certain time or be forever barred;” that said note was filed with the Clerk and Master by Wassum’s administrator, pursuant to said order; that part of said real estate was sold, under the decree in said cause, for some twelve or fifteen hundred dollars more than was required to pay all the debts of the estate; that the purchase money was paid into the office of the Clerk *23 and Master of said court, pursuant to an order of said court; that “ a great many claims” were filed and paid off, some of them between the years 1861 and 1863, by the Clerk and Master, or an agent transacting business for him, but that no part of the money was paid on the debt sued upon in this case. It does not appear that the administrator of Wassum ever applied to the Clerk and Master for payment, nor is it shown what became of the fund.
Upon this state of facts and under proper pleadings and notice, his Honor charged the jury that if the bill was filed in the Chancery Court “to wind up the estate and pay off all the debts; that the same was wound up by the sale .of lands of Was-sum; that notice was given to creditors to file their claims in a given time, and the note sued upon was filed, an account taken and stated by the Master and confirmed by the court, and a fund collected to satisfy the same, this would be a satisfaction of the note, and in that event you will find for the defendant; but if the proof fails to satisfy you of the payment, you will find for the plaintiff.”
It is argued, with much force and ingenuity in behalf of the plaintiff, that this charge is erroneous, because, in the view of a court of law, both makers of or obligors in the nóte, or bill single, were principals, and for the additional reasons that both or either might have been sued under our statutes; that if the surety desired to be relieved, it was his duty to give notice to the holder to sue; that after the administrator filed his bill, the creditors not' being *24 parties, bad no power to control the application of the fund raised in that proceeding; that it was the duty of Wassum’s administrator to appropriate the fund; that the bare raising of an amount sufficient by the sale of the land can not be treated as a satisfaction of the debt, and is not a payment in such a sense as to exonerate the surety.
It may be remarked that the declaration filed in this case describes the lost instrument sued upon as a promissory note or bill single, “ made by Jacob L. Wassum, deceased, and R. N. Gillespie, deceased, as a security,” and that it was expressly proved upon the trial, by James W. Gillespie, a witness for defendants, that he, as holder of the note, filed it with the Clerk and Master, “ under an order of the Chancery Court requiring the creditors of Jacob L. Wassum to file their claims in said office.”
There can be no question, under the laws of this State, that it was optional with the holder of the note to sue both, or either of the makers, and that even after filing his claim in chancery he could, at least under leave from the court, have prosecuted a suit at law against the surety alone while that suit was pending. But if he had sued at law and obtained judgment against the principal and his surety as such, it is equally clear under the Code, ss. 3028 and 4093, süb-s. 12, that a collecting officer in making the money under executions, would have been corn-compelled to exhaust the property of the principal before selling that of the surety. When the holder of the note, or bill single, filed it as a claim in the *25 chancery proeceeding under the order of the court, it is to be presumed that it was his object within the spirit of the statute to exhaust the principal’s property before proceeding against the surety, and there can be no doubt that if it had been insufficient for that purpose he could, by proper proceedings against the surety, have enforced the payment of any remaining balance. By becoming a party to the suit he signified his purpose to obtain satisfaction out of the property belonging to the estate of the principal debtor and could not occupy a passive or neutral position. The fund arising from the sale of the land was not under the control of the administrator, but was in the custody of the court, as expressly held in Dulles v. Read, 6 Yer., 68. Having filed his claim, it was the duty of the holder to apply to the court for an order directing the Clerk and Master to pay it out of the fund in his hands. The object of the bill was to obtain a sale of. the land for the payment of debts under the Code, ss. 2267 to 2270, re-enacting the acts of 1827, c. 54, s. 4, and 1831, c. 22, s. 1. It was for the benefit of creditors, and any creditor had the right under the statute to file it, if the administrator had not done so Code: 2267; Dulles v Dead, 6 Yer., 67. And we hold that, as between the creditor and the surety to the note, when a sufficient amount was realized by the sale of the land belonging to the estate of the deceased principal for the satisfaction of all the debts, the payment of the money arising from the sale into court was, to all intents and purposes a discharge of the surety both *26 at law and in equity. The creditor had nothing to do but to call upon the court for an order directing the clerk to make payments and to receive and receipt for the same. For aught that appears in this record, the fund is yet in custody of the court. It is not even shown by the proof that the Clerk and Master and his sureties are insolvent, or that any order of court was ever applied for by the holder or demand made upon the Clerk and Master. It is shown in the evidence as to the lost record, that many of the creditors were actually paid by the Master, and it is not unreasonable to infer that there was a general, order or decree authorizing the payment of all. More than five years elapsed after these payments were made before the commencement of this suit, and if the debt is lost to the creditor -it is by such gross negligence as exonerates the surety.
This conclusion does not militate against previous decisions of this court, in which it has been held that the statute providing for the levy of an execution upon the principals property in the first instance, is merely directory, and that when the property of the principal is incumbered it is the duty of the officer to proceed at once under his execution against that of the surety: See Atkinson v. Rhea, 1 Hum., 60, 61; Cheatham v. Brien, 3 Head, 554, 555. It is merely a different application of the principle already determined in this State, that if the personal estate of the principal debtor of value sufficient to pay the debt is levied on, the surety is discharged and the debt as to him satisfied: Finley v. King, 1 Head, 124. And *27 this may be shown in a court of law: Ibid; see also Beeler v. Hall, 11 Hum., 446; Chaffin, v. Campbell, 4 Sneed, 191, 192.
In equity it is well settled that a ' surety is entitled to the benefit of all securities which the creditor obtains against the principal debtor: Henry v. Compton, 2 Head, 552. And if the creditor who has had, or ought to have had, them in his full possession or power loses them, or permits them to get into the possession of the debtor, the surety will, to the extent t>f such security, be discharged: 3 Lead, cases in Equity, 3 ed. 543. So when the creditor releases or compounds with the debtor without the concurrence of the surety, although it may be done by mistake or for the benefit of the surety, he will thereby discharge the surety: Ibid, 540. And upon the principle that the creditor, having taken out execution against the debtor, is á trustee of it for all parties interested, it has been held in various cases in England, that if, without the knowledge of the sureties,’ he withdraws the execution, he thereby discharges the sureties: Ibid, 536.
One of the pleas on which issue was taken in this ease is nil debit, which put in issue the existence of the debt at the time of pleading, and under this plea any matter could be given in evidence which showed that nothing was due at that time as payment or a release, or any other matter in discharge of the debt': 1 Chit. PL, 481.
The judgment of the Circuit Court is correct and will be affirmed.